We'll move to our fourth case this morning, United States against Janet Guerrero. But this is the appeal of Danilo Tinimbang, if I'm pronouncing it correctly. Edward Campbell for the appellant and claimant Danilo Tinimbang, if it'll please the court. We're here today because my client, Danilo Tinimbang, I'll refer to as a claimant to keep things simple going forward here, was divested of his assets by the criminal defendants in the underlying criminal forfeiture case of which this was an ancillary proceeding. We have a clear-cut line of the assets that my client had stolen from him, over $811,000. I will not recite the entire litany of facts. They have been conceded in the opinion and Judge Pallmeyer's pretty fact-intensive trial court opinion. The things that I wanted to highlight here is that the criminal defendants and the criminal enterprise here that was at issue in the underlying case is the same one that was initiating the fraud against Mr. Tinimbang. It's the same money laundering. It's just that the criminal defendants, and in this particular case it was Janet Guerrero, who by all counts was a straw person, has no good tie to these assets, and was a co-conspirator of the other criminal defendants, had the next phase of their scheme was to defraud the government after taking out the... Mr. Campbell, could I ask you, does Mr. Tinimbang still own his stock in Donna Rich? He had a vested interest in it, and he owns it according to the Illinois Circuit Court, but it's a non-entity. Well, yeah, I assume it's worthless, but what I'm trying to understand here, as I understand his arguments here, he has what amounts to corporation law claims against his ex-wife and at least one child for having stripped Donna Rich of its assets, correct? That is correct. Okay. Which, I mean, sometimes in that context we'll talk about theft or seizing of assets and so on, but this is a corporation law claim at its heart, correct? Well, it's also a marital asset claim. Well, we'll get there, okay? Oh, yes. Okay, but has he pursued any remedies against those responsible under corporation law? Well, Your Honor, my understanding of how this played out was he had, his remedies were then thereafter, when the healthcare fraud was being pursued, he was frozen out of pursuing his own remedies, Your Honor, but he hasn't, to answer your question directly, been able to do so because it would have, A, he had these other proceedings going on, and B, it clearly would have been fruitless. So, I don't know, would this case look any different if his ex-wife Josie had just taken money out of their joint checking account and used it in this criminal venture? It might have a different flavor a little bit, but in this particular case, there were some remedies that Mr. Tenenbaum had put in there himself, it wasn't just a matter of a title being abused. Okay. And basically, in the aggregate, what we had happen was the undisputed taking of my client's property, it was utilized to get the, Well, again, I'm sorry, I want to quibble a little bit when you say taking of your client's property, it was a misuse of corporate assets, right? In a closely held corporation. Well, it was undisputed that my client funded the corporation and he had taken personal assets and marital assets to put the money in there, and he was involved in the original health care company, Donneridge, which by all accounts had no involvement with the underlying fraud. They proceeded to operate for a period of time, and he was kicked out of the company. Mr. Tenenbaum, right, I think we got the, can I, just in the, I don't want to run out of your time here. Can I ask you a question that's a little bit different? Can you explain what steps, in your view, your client took to carry his burden under 21 U.S.C. 853 N6? Can you itemize those steps? Okay, the steps he took were, within his realm of capacity to do, ability, were to show by the government's own tracing that the money that was put in originated with him, however you want to characterize it, as a marital interest or a corporate interest. He is not saying, because he was unable to afford and complete his own tracing, that he disputes anything that the government says, but what he's saying is, if you have money that are not proceeds of the fraud, then basically that takes it out of the statute, because the statute is intended to grab assets that are the proceeds of fraud, and what he's saying is, even if you take the government's analysis at face value, that there are assets there that, if this case was decided correctly under the appropriate presumptions, federal and state, that you would have no, almost no choice, and certainly a reasonable jury could presume on, that these assets that, from unspecified sources, that got taken. Right, so that, okay, that's fair. I thought that that's pretty much what you say in your brief, clearly. Okay, the follow-up question then is, in your view, did the district court, Chief Judge Pallmeyer, did she commit legal error, in her opinion, when she talked about how, oftentimes, money laundering is affected by commingling dirty money with clean money? Because if you say, well, we don't know, we have some unspecified sources, etc., let's call it clean money, to make it easy, is that legal error on her part? Your Honor, I think that . . . You tend to make more of an equitable argument that Mr. Tinnenbaum finds himself in a miserable situation. This goes back to your colloquy with Judge Hamilton. Got it. Equity, fair, I got it. Okay, but is her opinion reflect a legal error, in your view? Absolutely. There were at least a couple of plain legal errors in how she handled it. One of which was in the manner in which they disposed of the property law claim, number one, they assumed, and there's language in there to the effect that if we have money that is tied up in this sort of scheme, that it is basically an uphill battle for the claimant. And they go into these issues about forfeitability, but that's getting the cart before the horse. And I cite the case, I think it's Lester, that talks about how we need to decide in these cases the state property law rights first, and not move backwards from a conflicting presumption and get into the weeds on this non-forfeitability, because if you take that argument to its logical conclusion, of course we're contesting the forfeiture, because no one would have these ancillary proceedings or participate if that wasn't the case. But the second legal error she made, which is sort of like the catch-all, was like, well, even if we had any quibble about what these individual state rights are, it was involved in money laundering. And that's almost the most egregious and far-reaching implication of this result, because any time anyone was innocently taken advantage of and had their money put into this position where it was commingled with everything and become involved in money laundering, they would be out of luck. And I guess I need to reserve some time. That's fine. Thank you. Mr. Cain. Good morning, Your Honors, and may it please the Court, Daniel Cain for the United States. The forfeiture proceeding below was designed to determine whether Mr. Tinnenbang was the rightful owner of a particular set of assets that were derived from the laundered proceeds of health care fraud. Even after discovery, he couldn't show that he had a vested or superior interest in those assets. There was therefore no genuine issue of fact, and the District Court properly granted the government's motion for summary judgment. In his opening brief on appeal, Mr. Tinnenbang raised two claims of error in the District Court's decision. The first, which Mr. Kemp did not address just now, was the claim that the District Court applied an erroneous standard, an unfair standard, in evaluating that claim. That argument hasn't been presented to you today, but the answer is that the District Court applied the statutory standard, that the claimant bears the burden to establish by a preponderance of the evidence his interest in this property. The second claim, which you do hear about this morning, is that the District Court erred insofar as it determined that Mr. Tinnenbang's assets were involved in the money laundering scheme, and so he was disentitled to them. That is not what Chief Judge Pallmeyer found or held. Chief Judge Pallmeyer found or held, at the preliminary forfeiture stage, that the assets that Mr. Tinnenbang had, that's what rendered them forfeitable. In denying the third-party claim brought by Mr. Tinnenbang, what the District Court found is that Mr. Tinnenbang had not identified his interest in those particular assets. Not that he didn't have some sort of generalized interest or perhaps equitable interest in property that might have been recovered from Josephine in a different proceeding, but he didn't have an interest in these assets because he failed to trace his interest in those assets. That's enough to resolve this appeal. There was no legal error in the District Court's opinion. And I'd welcome the Court's questions. But isn't that, at that step of Judge Pallmeyer's analysis, where the idea of commingled assets and fraudulent schemes like this came into play because it's not enough in a subsection N6 claim to just attack the basis for the forfeiture order. The claimant has to establish either a superior right to the assets or a vested right over the defendant at the time of the offense. And I think, as I read the order, that's where the idea of the commingling of the assets came into play, if I'm not mistaken. That's exactly right, Your Honor. And not only is it not enough, it's forbidden by statute. The third-party claimant has no right to challenge the underlying forfeitability. And I agree that Chief Judge Pallmeyer was merely explaining, and I think she actually uses these exact words, even if Mr. Tindmay did have the right to challenge the forfeitability, the assets were commingled. And as this Court has held in Baker and reiterated elsewhere, clean money is often involved in money laundering. It's how money laundering works. So is there a limit to that rule? Go back to our drop of ink in a gallon of milk analogy. Absolutely, Your Honor. There is a limit. And the limit is the substantive standard for the money launderer, right? There has to be an intent to conceal. The fact that clean money coexists with dirty money is not sufficient. The government has to prove. Who has to have the intent to conceal? The money launderer. The money launderer. Right. So in the underlying criminal case to which Ms. Guerrero pleaded guilty, she admitted that intent to conceal. Right. Right. Okay. So if she has, let's get away from ink and milk and let's say it's $100,000 in dirty cash being laundered through $10 million of clean money. Can you grab all $10 million? Two parts to that answer, Your Honor. The first is it is forfeitable. It's forfeitable if it's involved in the money laundering. It's forfeitable at least vis-a-vis the criminal defendant, right? That is right, though there is an Eighth Amendment backstop I should emphasize. An important backstop here is the excessive fines clause to the extent that the entire conduct, you might have a problem there. But yes, it is forfeitable under the statute if the court finds that the property was involved in money laundering, i.e. that it was used with the intent to conceal. So if I'm understanding the party's arguments here correctly, the decision to work out a plea agreement with Ms. Guerrero in which she pleads to money laundering winds up having a huge effect in terms of forfeitability, right? Yes, Your Honor. I think so. I mean, this is a criminal forfeiture proceeding. It's what authorizes. Right. But in a way that a fraud conviction alone would not in terms of being able to forfeit so-called clean money. Right. Under Section 982, the standards are different for different statutes of conviction. Here the statute of conviction is a 1956 money laundering conspiracy. And so you get the application of 982A1, which specifically addresses funds, or quote, involved in such offense or any property traceable to funds that are involved in such an offense. The scheme of this statute is to frustrate money laundering efforts. It's to guarantee that money laundering doesn't pay. It's to guarantee that the government, which in this case is the victim, has the opportunity to recover those funds that were part of the money laundering operation and put them to better purposes. Now, this ancillary proceeding is designed to make sure that the property, the specific property that was used in the money laundering operation, isn't someone else's property. Could you address the winger against Chicago City Bank and Trust Company who was brought up in the reply brief? I can, Your Honor, with the caveat that it was brought up only in the reply brief and so is waived under this court's case law. Not only was the case only raised in the reply brief, the argument about constructive trust was raised only in the reply brief. That doesn't appear in the opening brief. It was addressed, I think, quite thoroughly by Chief Judge Pallmeyer in the district court at, I think, pages somewhere between 16 and 21 in the appendix. But I think there are two keys here with respect to winger. The first, Judge Hamilton, traces back to your question before, which is that was a corporation case, right? That was a conversion case brought by shareholders in a corporation. And as I think you discussed with counsel for the appellant, Mr. Tindemay didn't seek any remedy of that sort before. But more importantly, I think charitably construed the argument or favorably construed the argument is that he could have established, even in this ancillary proceeding, that he was entitled to a constructive trust over the assets that he invested in Donorips, the roughly $811,000. Even supposing that's true, granting that for purposes of this case, as several courts have appealed, the First Circuit has a really, I think, persuasive discussion of this in Cadillac, which I commend to the court's attention. A constructive trust exists in respect to a particular asset. It is a trust over a particular rest. The rest of the constructive trust that perhaps Mr. Tindemay could have established in a corporate case would have been the $811,000 that he invested and that he argues were converted fraudulently. That is not the same thing, necessarily the same thing, as the POF assets in this case. He would still bear the burden in this ancillary proceeding of proving that he has an interest in those assets. Now, he argues, based on Winger, that the burden would shift to the tortfeasors or the corporate bad actors. That is true only to the extent that he could identify a fund or a rest containing both the subject of his constructive trust and commingled assets. He hasn't even done that here. He hasn't met that minimal burden, and for that reason. What was the First Circuit case you cited a moment ago? Katala. I can give you the site. It is cited in the District Court's opinion and in our brief. It is 870F3-6. Just respect to the idea that it uses the phrase, a specific chunk of cash. That is the phrase that the Court uses. You have to show an entitlement to the specific chunk of cash that is at issue in the POF assets in the preliminary order of forfeiture, and Mr. Tindemay hasn't done that here. It is a very difficult burden to carry, right, given that the forfeiture attaches, right, at the moment the underlying crime is committed, the forfeiture attaches to the derivative assets, right? This is this whole relation back. I mean, I take what you're saying as descriptive. The burden is accurate. That's a very hard one. I don't know how you do that. Well, it is a difficult burden, I think, intentionally, so I think that reflects Congress's scheme. But if I can respond to that question quickly, I think there are two points that might give the Court some comfort. One is even with respect to this case, one of the POF assets is itself a collection of funds. It's a deposit account. If Mr. Tindemay could show through a tracing, or perhaps through testimony if you could find it, though that would be difficult too, that the money he invested was in that collection of funds, that would suffice to show his prior interest. Yeah, pre-money laundering. That's right. Pre-healthcare fraud and all that, yeah. And second, I do think, as several courts of appeals have noted, Hooper and the Ninth Circuit in Hooper, the Second Circuit in Watts, the First Circuit in Catala have all noted, Congress's scheme here is really better designed to protect third parties' interest in instrumentalities, like the car that a drug dealer uses. Say a drug dealer uses his wife's car to traffic drugs. That's a case where this third-party proceeding really does have quite a bit of bite. It allows the claimant to say, that was a car I had an interest in. Yes, you used it. Yes, it's forfeitable. Yes, it's subject to forfeiture. That really was mine. It is difficult with cash. That's one of the problems with money laundering. If I could just ask very briefly, you mentioned the remission proceedings in your brief. Does the Department of Justice, or do you have public information about how often that has been invoked and how often relief has been granted? I spoke with somebody from the money laundering and asset recovery section before this argument, and the answer I got is that it is often granted. I don't have particular data on how often it's granted, but that was the answer I got. I'd be happy to try to dig up those statistics if it would be helpful. I do think it would require, I think, in this case, a showing that Mr. Tinderbag had some entitlement to the particular assets he's claiming, which, as we argued in our brief, I think is a sensible allocation of the burden. Thank you. Thank you, Your Honor. Thank you. Mr. Candle. Your Honor, in summary, what's happened here is the government has used federal law and these different nuances to just trample over my client's clear-cut state court property rights. They stand in the shoes of the criminal defendant, Ms. Guerrero, who has no real claim to these assets, and essentially they want to take advantage of her fraud to disgorge my client's assets that he would otherwise be entitled to if we were in a state court proceeding. We have a straw owner. We have the money coming in. A reasonable jury could easily infer that at minimum the $400,000 from unspecified sources is from Mr. Tinderbag. He put it in Donneridge. It came out Donneridge. The tracing shows the money flowed. And as far as the burden that, Your Honor, you pointed out, you think they are trying to impose on us, it's practically impossible. That doesn't jive with the property rights under state law. Under the Winger case, I raised the issue of constructive trust. We raised the issues of the tracing requirements being relaxed in the prior briefs, in the briefing of the matter in district court. We certainly don't think the government, again, can stand in the shoes of Ms. Guerrero, take advantage of the money laundering that she was guilty of, and that she could have been charged with in relation to Guerrero, pardon me, in relation to my client, if the government had so chose. It happens every day, as I understand it, where a third party's property is taken, it gets sucked into a money laundering operation such as this. The government may have a claim, and it could have made a separate count here with relation to that. It didn't, and so now it controls everything, and it's abusing the processes of the federal court to get away with something that it couldn't possibly get if we had been permitted to proceed in state court and we didn't have the forfeiture involved. All right, thank you very much. Our thanks to both counsel. The case is taken under advisement.